**SAMEDAN OIL CORPORATION,**
**Appellant,**

v.

**LOUIS DREYFUS NATURAL GAS**
**CORPORATION, Appellee.**

No. 11–00–00041–CV.

Court of Appeals of Texas,
Eastland.

May 24, 2001.

Rehearing Overruled May 24, 2001.

Alan B. Cameron, Hult & Cameron, Boulder, CO, David M. Gunn, Hogan Dubose & Townsend, Lawrence F. Labanowski, Sheila Mathis Lawrence F. Labanowski & Associates, Houston, for appellant.

Bennett S. Bartlett, T. Brooke Farnsworth, Farnsworth & Vonberg, Arlo Van Denover, Houston, Jorge E. Castillo, Denver, CO, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

McCALL, Justice.

The trial court entered a summary judgment on the ground that a Colorado judgment in a suit involving these same parties was res judicata of the issues in this case. We modify the trial court's judgment to make it clear that its holding of res judicata does not bar future disputes that could not have been decided in the Colorado litigation. As modified, we affirm.

The dispute between the parties to this case arose out of agreements entered into by their predecessors in interest. Louis Dreyfus Natural Gas Corporation (LDNG) is the successor in interest to Britoil Ventures, Inc. (Britoil). Samedan Oil Corporation (Samedan) is the successor in interest to McMoRan Oil & Gas Company (McMoRan). In 1985, Britoil entered into a Purchase and Participation Agreement (Participation Agreement) with McMoRan to acquire oil and gas producing properties in a number of states, including the Bowdoin Field in Montana. Under the terms of the Participation Agreement, McMoRan, as operator, agreed to perform additional administrative services for Britoil relating to the latter's Bowdoin Field oil and gas wells. For these services, McMoRan charged additional overhead fees. Britoil subsequently was acquired by American Exploration Company (American), a large company capable of handling the administrative services then being performed by McMoRan. When American attempted to terminate the Participation

Agreement, McMoRan agreed to the 1988 Letter Agreement which involved a change in the method for determining overhead fees.

In 1993, Samedan purchased McMo-Ran's oil and gas interests. Believing that the Participation Agreement, as amended by the 1988 Letter Agreement, terminated when McMoRan sold its interests, American reduced the amount of overhead fees it was paying on certain wells in the Bowdoin Field. Disagreeing with American, Samedan filed suit in Colorado against American in 1996. LDNG subsequently acquired American; hence, our discussion of the litigation will refer to LDNG and not to American.

Samedan's petition in Colorado requested a stay of proceedings pending an agreed arbitration of certain matters that were the subject of the litigation. To preclude a later application of the statute of limitations, Samedan's petition set forth its claims. The petition's first claim for relief contained a request for a declaratory judgment by the Colorado court that the Participation Agreement was still in effect between Samedan and LDNG, that Samedan's calculation of overhead fees and rates on oil and gas properties in the Bowdoin Field was correct, and that Samedan was entitled to reimbursement for the amounts that LDNG had refused to pay. Samedan's second claim for relief asserted that LDNG had breached their contract, and its third claim for relief claimed unjust enrichment; both claims requested damages, interest, attorneys' fees, and court costs. Samedan's fourth claim for relief requested the placement of an equitable or constructive trust on all of LDNG's oil and gas interests in the Bowdoin Field and an award of damages to Samedan. Samedan's fifth claim for relief requested an accounting, and its sixth claim for relief asserted tortious breach of

contract and wrongful withholding of monies due. Thus, Samedan's petition asserted six causes of action based upon the premise that LDNG had improperly underpaid overhead fees to Samedan.

After Samedan filed the Colorado suit, the parties represented to the court that all issues raised in Samedan's petition were being submitted to arbitration. The arbitration panel ruled in Samedan's favor as follows:

A majority of the Panel concluded that Paragraph 4 of the Letter Agreement of October 28, 1988 is not sufficiently explicit to terminate the Purchase and Participation Agreement of March 20, 1985 in the event of an assignment by McMoRan and that the position of Samedan on this contract interpretation issue should be adopted.

A majority of the Panel thus concludes that Samedan is entitled to charge and receive payment of monthly overhead fees or rates as provided in the Purchase and Participation Agreement of March 20, 1985, as amended in the October 28, 1988 Letter Agreement, as to wells and properties in the Bowdoin Area of Phillips and Valley Counties, Montana, in which Samedan and [LDNG] are the only parties who own interests.

Upon Samedan's request, the Colorado court entered the award as the judgment of the court. The parties disagreed as to the effect of the arbitration award judgment. LDNG took the position that, although the award judgment declared that the Participation Agreement was still in effect, issues remained that involved the interpretation of the Participation Agreement. LDNG contended that the award did not decide whether Samedan had properly invoiced LDNG for oil and gas wells in which Samedan and LDNG were the only parties owning interests or for oil and

gas wells in which third parties were involved and that it did not address whether LDNG's deductions from the amounts invoiced by Samedan were proper under the Participation Agreement. Accordingly, LDNG filed a motion requesting a court scheduling order to allow the other issues in the case to be decided.

Samedan opposed LDNG's motion, filing a brief and a motion to enforce the Colorado judgment on the basis that it was final, that the Colorado court was without jurisdiction to do anything but enforce the judgment, that the court should order LDNG to pay $978,614.61 to Samedan, and that the court should order that LDNG pay prospectively all overhead fees as billed by Samedan. LDNG claims that it filed this declaratory action in Texas because Samedan's motion to the Colorado court argued that the Colorado court had lost jurisdiction and because Samedan was demanding the payment of $978,614.61.

Despite the pending post-judgment motions in Colorado, LDNG's petition requested that the Texas court decide the proper calculation of overhead fees under the Participation Agreement. Samedan's response in Texas was that "[a]ll matters and claims which are the subject of this litigation have been fully and fairly litigated in the Colorado Lawsuit." Samedan pleaded the affirmative defenses of arbitration and award, collateral estoppel, and res judicata.

LDNG subsequently changed its position in this case to agree that the Colorado judgment was a final judgment and that it was res judicata as to all causes of action that Samedan asserted in the Colorado case. The reason for the reversal in LDNG's position was that, after LDNG filed this Texas case, the Colorado court entered an order agreeing with Samedan that its earlier judgment was final and that the court had lost jurisdiction of the case.

However, the Colorado court rejected Samedan's motion to enforce judgment, observing that its final judgment provided no basis for ordering LDNG to pay Samedan $978,614.61 or for ordering LDNG to pay prospectively all overhead fees as billed by Samedan. The Colorado court's September 1998 order denied the relief sought by the post-judgment motions of both parties for the stated reason that the court no longer had jurisdiction. Neither party appealed the September 1998 Colorado order, although an appeal might have determined whether the earlier judgment was interlocutory, as LDNG had contended, or was final and should have awarded damages, as Samedan contended.

Referring to the September 1998 Colorado order, LDNG amended its Texas petition and filed a motion for summary judgment asking for a declaratory judgment that the Colorado judgment was res judicata as to all issues raised in Texas. After LDNG filed its motion for summary judgment, Samedan filed a counterclaim asserting that the Colorado judgment was final, that LDNG had "complied" with the judgment by paying the overhead fees charged during the period October 1997 through April 1998, that LDNG had subsequently breached the arbitration award judgment by refusing to continue to pay the overhead fees as billed by Samedan, and that the Texas court should order LDNG to pay principal and interest of $1,615,528.34 to Samedan based upon the Colorado final judgment. Because Samedan's counterclaim was premised upon its position that the Colorado judgment was "final" and thus addressed by LDNG's motion for summary judgment grounds, LDNG did not amend its summary judgment motion to refer to Samedan's counterclaim.

Samedan also filed a motion for partial summary judgment on the grounds that

the causes of action pleaded by LDNG were barred under the doctrines of res judicata and collateral estoppel or under the rules governing compulsory counterclaims. By filing a motion for partial summary judgment, Samedan attempted to leave for determination its counterclaim that LDNG had breached the "final" Colorado judgment and its request for damages from LDNG.

The trial court granted LDNG's motion for summary judgment and also ruled in favor of Samedan's motion for partial summary judgment. In effect, the trial court ruled that all issues raised or that could have been raised in the Colorado litigation were now barred by res judicata. We agree.

### Res Judicata and Estoppel

Actions taken by the parties have unnecessarily complicated this case. Samedan's motion before the Colorado court contending that its earlier order was a complete and final judgment began the confusion. On its face, the earlier Colorado judgment did not interpret the Participation Agreement or order LDNG to pay any money; yet, Samedan insisted and continues to insist that the original Colorado judgment was a final and complete judgment. LDNG's action in Texas appears to have been unnecessary because Colorado was at the time the appropriate forum for final resolution of this dispute. Nevertheless, we are faced with this appeal from a final Texas judgment.

█ In its first issue, Samedan asserts that the trial court erred in granting

LDNG a summary judgment based upon res judicata because Texas cases have held that a litigant cannot use the Texas Declaratory Judgment Act[1] to seek a judicial interpretation of a prior judgment. *Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350 (Tex.App.—San Antonio 1999, pet'n den'd); *Cohen v. Cohen*, 632 S.W.2d 172 (Tex. App.—Waco 1982, no writ). Although we agree with this rule, it is not applicable because LDNG did not seek an interpretation of the Colorado judgment. LDNG only contended that there was a final Colorado judgment regardless of its provisions.

█ In its second issue, Samedan argues that, even if the trial court was authorized to enter a judgment, LDNG did not carry its summary judgment burden of conclusively establishing all the essential elements of res judicata. LDNG had to prove: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. See *Amstadt v. United States Brass Corporation*, 919 S.W.2d 644, 652 (Tex. 1996). Samedan agrees that the parties are identical here. Samedan is estopped from arguing against the first element because of its successful position that the Colorado judgment was a final judgment.[2]

In opposing LDNG's motion for a court scheduling order, Samedan argued to the Colorado court that the arbitration award judgment was a "final" judgment disposing of all issues raised in Samedan's complaint and that the time for appealing that judg-

1. TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 et seq. (Vernon 1997 & Supp. 2001).

2. See *Sewell Paint & Glass Co. of Texas v. Booth Lumber & Loan Co. of Texas*, 50 S.W.2d 793, 794 (Tex. Comm'n App.1932, judgm't adopted)(holding that a party who induced a court to rule in its favor on special exceptions could not take a different position on the matter in a different suit); *Johnson v. Johnson–McHenry*, 978 S.W.2d 142, 145 (Tex. App.—Austin 1998, no pet'n).

ment had expired. Samedan was successful in convincing the Colorado court that the arbitration award judgment was a complete and final judgment. The Colorado court entered its September 1998 order, denying LDNG's motion to have other issues (e.g., interpretation of the Participation Agreement) scheduled for hearing, because the court found that it had lost jurisdiction due to the passage of time from the date of the earlier "final" arbitration award judgment.

■ In its sworn pleadings and arguments to the trial court in this case, as in its unsworn but successful motion before the Colorado court, Samedan asserted that the Colorado judgment was res judicata of the issues that were raised or that should have been raised in Colorado. Samedan's counterclaim in this case was based on the same assertion-that the Colorado arbitration award judgment was a final judgment on all claims. Samedan's response to LDNG's motion for summary judgment asserted:

> Suffice it to say that all of the *issues* or claims as to which LDNG seeks res judicata treatment are subsumed in and fully and finally resolved by the final judgment in the prior Colorado case. (Emphasis added)

After the trial court granted LDNG's motion for summary judgment on the ground of res judicata, Samedan filed a motion to modify the order that included a request that the trial court rule that any claims by LDNG were barred by res judicata as set forth in its motion for partial summary judgment. The trial court agreed with

Samedan and included a paragraph in its Modified Final Judgment that:

> [A]ll claims and causes of action brought by Louis Dreyfus Natural Gas Corp. in this case ... are [barred by] res judicata, and barred from being litigated.

Samedan has consistently asserted that the Colorado court's arbitration award order was a final judgment disposing of all claims and issues that were raised or that could have been raised in that litigation. Samedan is estopped to assert otherwise now.[3]

Although Samedan argues that the third element of res judicata (a second action involving the same claims) was not met, the record reflects otherwise. Samedan's counterclaim asks for a money judgment based on the "final" Colorado court judgment; however, the Colorado "final" judgment it seeks to enforce contains no order for LDNG to pay anything. For Samedan to be successful on its counterclaim, Samedan would have had to litigate its Colorado claims in the trial court below. The trial court below correctly held that the Colorado judgment was res judicata of the claims raised by both parties in Texas. Samedan's first two issues are overruled.

■ Samedan's third issue asserts that LDNG was not entitled to a summary judgment against Samedan's counterclaim because there was not a supporting ground in the motion. We disagree. Samedan's counterclaim requests the Texas court to enforce the Colorado judgment. The implicit premise underlying Samedan's counterclaim in this case is that the Colorado court entered a final self-executing judg-

---

**3.** A party may not request that the trial court take a particular action and then complain on appeal that the court committed error in granting its request. *Northeast Texas Motor Lines v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (Com.App.1942); *Austin Transportation Study Policy Advisory Committee v. Sierra*

*Club,* 843 S.W.2d 683, 689 (Tex.App.—Austin 1992, writ den'd). Samedan's assertion of res judicata as to LDNG's claims necessarily included all claims or issues raised or that could have been raised in the Colorado litigation.

ment that disposed of the issues raised in that litigation. Although the better practice would have been to amend the motion for summary judgment, LDNG did not need to amend because its motion for summary judgment clearly set forth that the Colorado judgment was final and res judicata even though it contained no determination of damages. See *Judwin Properties, Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 501–08 (Tex.App.—Houston [1st Dist.] 1995, no writ)(defendant did not need to amend motion for summary judgment that contemplated plaintiff's amended causes of action). Moreover, there is nothing in the Colorado final judgment for LDNG to have breached.

■ Samedan points out that the trial court's judgment, which is now before us for review, appears broad enough to cover future disputes that might arise under the Participation Agreement. Res judicata does not apply to future disputes between the parties involving different questions. *Texas Employers' Insurance Association v. Tobias*, 669 S.W.2d 742, 744–45 (Tex. App.-San Antonio 1983, writ ref'd n.r.e.). The parties have advised this court that there is ongoing litigation in Colorado and Texas.

■ The "final" Colorado judgment is conclusive of all matters that were directly put in issue by the pleadings. *Grayson County Nat. Bank v. Wandelohr*, 105 Tex. 226, 146 S.W. 1186 (1912). Res judicata, or claim preclusion, prevents relitigation of a claim or a cause of action that has been finally adjudicated in a prior suit between the same parties. Claim preclusion in-

cludes the inherent issues or elements necessary to establish the claim.[4] The doctrine of res judicata extends to questions of law and issues of fact. See *Swilley v. McCain*, 374 S.W.2d 871, 874 (Tex.1964). An interpretation of an agreement can be an issue within a claim or it can be the claim. See *Cornell v. Cornell*, 413 S.W.2d 385 (Tex.1967)(California judgment held to be res judicata on whether provisions of property settlement agreement constituted a void contract to pay alimony). Samedan's claims in its Colorado petition sought a determination that LDNG was paying the wrong amount of overhead fees; yet, its requested "final" judgment contains no such determination. Samedan had the opportunity to litigate LDNG's payment methodology, but it chose instead to prevent the litigation of that issue by inducing the Colorado court to enter its September 1998 order. Unless LDNG changes its payment methodology, that issue cannot be litigated again.

### This Court's Ruling

The Texas trial court's judgment is modified to apply res judicata only to claims, including issues concerning the calculation of overhead fees and interpretations of the Participation Agreement, that were raised or could have been raised in the Colorado litigation. As modified, the trial court's judgment is affirmed.

---

**4.** Samedan is correct in stating that res judicata and collateral estoppel are different doctrines; however, collateral estoppel is not involved in this case. Samedan's argument that issues can be precluded only by collateral estoppel ignores the fact that claims are made up of issues. Res judicata is the broader preclusion doctrine. See 2 McDONALD & CARLSON, TEXAS CIVIL PRACTICE § 9:58[b] (rev. 1992 & Supp.2000); 48 TEX. JUR.3d JUDGMENTS § 451 et seq. (3d ed.1998). Texas follows the transactional approach to res judicata. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex.1992).